JAMES C. THOMPSON, Appellant, v. GEORGE F. LONGAN, Respondent.

Kansas City Court of Appeals, November 10, 1890.

1. **Evidence:** VERDICT. Evidence reviewed and *held* sufficient to support the verdict.

2. **Bills and Notes:** TRANSFER : MEETING OF MINDS. In the transfer of a note, as in other contracts, there must be a consensus of minds of indorser and indorsee.

3. ——— : ——— : AGENT : THIRD PARTY. Where the true owner of a negotiable note overdue clothes another with the usual evidence of ownership or with power of disposition, and third persons are thereby led into dealing with such apparent owner, and receive a transfer of the same, they will be protected.

4. ——— : PURCHASE : PAYMENT. Where a party's intention is to purchase and not to pay a note, the duty of the courts is to give effect to such intention.

5. **Evidence:** SUBSEQUENT MORTGAGE, WHEN NOT ADMISSIBLE. A subsequent mortgage, executed by the owner of the mortgaged property when it could only show the mortgagor considered the property free of a prior mortgage is not admissible in evidence to show the payment of the note secured by such prior mortgage, as the mortgagor cannot admit away the rights of the holder of the note.

*Appeal from the Pettis Circuit Court.*—HON. RICHARD FIELD, Judge.

Thompson v. Longan.

AFFIRMED.

*Charles E. Yeater*, for appellant.

( 1 )  Where it is sought to establish the purchase of a promissory note sent to a bank in the course of collection, it must be shown not only that the proposed, purchaser had the intention to purchase instead of to pay, but that the same intention likewise existed in the mind of the holder of the note.  *Campbell v. Allen*, 38 Mo. App. 27 ; *Wolff v. Walter*, 56 Mo. 292 ; *Bunn v. Lindsay*, 95 Mo. 250 ; *Carter v. Burr*, 113 U. S. 737. ( 2 )  The assignment of a note, like any other contract, must arise from a mutual consent and agreement in the minds of both the holder of the note and the proposed purchaser, and the testimony from which it appears that the intention to purchase existed only in the mind of the proposed purchaser, and was not brought to the knowledge of the holder and assented to by him, is not competent evidence.  Cases, *supra ;* Daniel on Negotiable Instruments [ 2 Ed.] sec. 1222.  ( 3 )  A bank to which commercial paper is sent for collection can only present and demand payment, and its authority is limited to that power only.  Hence the Continental Bank of St. Louis could only receive payment of the note in question, and had no right to sell or assign it to John O'Day who claims to have purchased it.  *Wolff v. Walter*, 56 Mo. 292.  ( 4 )  The chattel mortgage made by the Sedalia *Democrat* Newspaper Company, dated October 16, 1888, executed by said company through its president, Michael. K. McGrath, and offered in evidence by plaintiff, evidence already having been given tending to show that said mortgage was given subject to plaintiff's mortgage and one other only, and not to the mortgage in question, was competent as showing that it was the understanding of the said company that the note in question was paid off and discharged.  ( 5 ) The defendant's full and complete case is before the court as set forth in the record,

and it, therefore, follows, if the foregoing points are well taken, that, upon the defendant's own evidence he has no defense and the judgment should be for the plaintiff. Hence it being in the power of this court, in the words of the statute "to reverse * * * the judgment * * * of the circuit court, or give such judgment as such court ought to have given, as shall seem * * * agreeable to law," it becomes its duty to reverse this case, and either render judgment for the plaintiff or order the circuit court to enter such judgment. *Musser v. Harwood*, 23 Mo. App. 495.

*Geo. F. Longan, Sangree & Lamm*, for respondent.

(1) *First.* Payment is a mixed question of law and fact. *Adams v. Helm*, 55 Mo. 468. *Second.* And a statement that one has "paid" an account is not a statement of a fact, but of a conclusion of law, where the facts relied on as showing a payment do not constitute a payment in law. *Wear v. Lee*, 26 Mo. App. 99. *Third.* Payment is a matter of intent alone. *Blesse v. Blackburn*, 31 Mo. App. 264, at p. 268; *Watson v. Walther*, 23 Mo. App. 263; *Campbell v. Allen*, 38 Mo. App. 27. (2) The note being sent out with a blank indorsement was made thereby payable to bearer, and passed by delivery to anyone dealing with it in good faith. *Neuhoff v. O'Reilly*, 93 Mo. 164, at p. 169; 4 Lawson's Rights, Rem. and Pr., sec. 1561. (3) One who pays a mortgage debt at the instance of the mortgagor or debtor is entitled to subrogation. Sheldon on Subrogation, secs. 246, 247, 248; *Kuhn v. North*, 10 S. & R. 399; *Wolff v. Walter*, 56 Mo. 295; *Mosier's Appeal*, 6 P. F. Smith, 75; *Allen v. Dermott*, 80 Mo. 56. And an authorized payment by a stranger does not discharge the debt (*Neely v. Jones*, 16 W. Va. 625; *Building Ass'n v. Thompson*, 32 N. J. Eq. 133); and such payment is *prima facie* evidence of a purchase. *Brice's Appeal*, 95 Pa. St. 145; 1 Hilliard on Mort. 243,

253; *Lithcap v. Wilt*, 4 Phil. Rep. 64; *Wilson v. Murphy*, 1 Phil. Rep. 107; *McCall v. Lennox*, 9 S. & R. 304. Even if it were true (which it is not) that Russell and his principal were opposed to the assignment of the note to anyone, but on the other hand insisted on payment instead, yet that fact would not leave O'Day remediless in this form of action, acting as he did in the full and honest belief of an arrangement to assign and having no other intent but to buy, and so parted with his money. *Koontz v. Bank*, 51 Mo. 275; *Lyle v. Shinnebarger*, 17 Mo. App. 66; *Dobson v. Winer*, 26 Mo. App. 329, and authorities, *supra*. (4) The chattel mortgage made by McGrath, long after the alleged purchase by O'Day, was properly excluded. McGrath could not bind O'Day by his narrations in that mortgage, unless he was at the time his (O'Day's) agent for that express purpose. *McDermott v. Railroad*, 73 Mo. 516, at pp. 518, 519; *O'Bryan v. Kinney*, 74 Mo. 125; Greenl. on Ev. [Redfield's Ed.] secs. 113, 114; Story on Agency, secs. 134 137. And this chattel mortgage was none the less inadmissible in evidence because witness had improperly and without objection been allowed to testify as to statements made by McGrath at the time of the execution of the excluded mortgage.

*Charles E. Yeater*, for appellant, in reply.

In this case the right of subrogation can only be claimed by the defendant as against the maker of the note or the company succeeding it which assumed its payment, and not against the plaintiff who is a stranger to the first mortgage and holds rights adverse to it. *Wolff v. Walter*, 56 Mo. 295; Sheldon on Subrogation, secs. 3, 240-3. Authorities cited under respondent's seventh point. Also cases cited under first point herein.

GILL, J.—This is a suit in replevin, involving the title and right of possession to certain machinery, type,

etc., formerly belonging to the Sedalia *Democrat* Company. The real contestants are Lon V. Stephens, the holder of a junior, and John O'Day the claimant of a senior, mortgage on the property in dispute. Plaintiff Thompson is the trustee in the Stephens incumbrance, while defendant Longan is the trustee in the O'Day deed of trust. No question is made as to the original *bona fides* of both deeds of trust. At the time the suit was brought both debts were past due, and defendant Longan, trustee in the senior mortgage, had possession, by direction of his beneficiary, for the purpose of foreclosure. Thompson, trustee in the junior mortgage, took the goods on writ of replevin from Longan claiming that the said senior incumbrance had been theretofore paid and satisfied. This indeed presents the substantial issue of this case. If the mortgage, or deed of trust, under which defendant Longan claims had been paid off (as plaintiff insists) then there is no doubt as to the right of plaintiff to recover. But if O'Day was the holder of the same by *purchase* from the original owner then defendant's right to these goods is unquestionable. This issue was submitted to a jury in the circuit court, under instructions from the court, and a verdict and judgment had for the defendant, from which plaintiff has appealed. Plaintiff, in seeking a reversal of the judgment below, insists that on the admitted facts and evidence adduced at the trial the judgment was clearly for the wrong party; that there is no testimony to sustain the jury's finding. After a careful review of this record we must differ with the plaintiff's counsel. We hold that there is here shown ample evidence to sustain the verdict. It seems that the note secured by this senior mortgage is for fifteen hundred dollars, dated April, 1883, and it is admitted that the legal title by due indorsement was in J. H. Bothwell on the twenty-seventh day of June, 1888, but that he had no beneficial interest therein. It

is admitted that the title was put into him for the purpose of a contemplated purchase which was never consummated. On that day John D. Russell was the agent of one Mrs. Schmidt, the owner of the equitable title to the note with full power to deal with the same, and was as such agent pressing for the money thereon; while on the other hand Michael K. McGrath (representing the owner of the mortgaged property who had assumed the payment of the note) was trying to arrange a plan for Russell as such agent to get the money on the note. Some time prior to that Russell had demanded the money, and McGrath having no funds had gone to St. Louis and arranged with O'Day to advance it (about two thousand dollars), and take and hold the note and mortgage as a friend until he (McGrath) could adjust his business troubles and pay the debts of the concern he represented, of which said note was one; the payment of it having been assumed as aforesaid. In pursuance of an arrangement made between McGrath and O'Day, O'Day sent a blank form of indorsement and assignment to McGrath by mail to Sedalia. McGrath then took the note to Bothwell, and Russell went along (although some of the witnesses are not clear as to Russell's presence) and the blank indorsement, as dictated by O'Day and forwarded to McGrath, was placed on the note by Bothwell in the following form, and on the following date:

"SEDALIA, Mo., June 27, 1888.

"For value received, pay to the order of ——— without recourse on me, and I hereby assign same to him.

"(Signed.)  J. H. BOTHWELL."

If Russell did not go to Bothwell's office to have this indorsement made, he sent the note with McGrath to have it done. Russell was indifferent as to whether the note was sold, or "paid," or discharged. Part of the arrangement of McGrath with O'Day was that the indorsement should be in blank, so a name could be

inserted, and that the note should be sent to the Continental Bank of St. Louis to receive the money, and deliver the note and mortgage to him as live paper secured by a first lien. In accordance with this understanding, steps were taken to send the note through the First National Bank of Sedalia to the Continental Bank. The mortgage itself was mislaid or not at hand, and was not sent. Russell thinks he took the note to the bank. Thompson, the cashier of the First National Bank, thinks Mrs. Russell (wife of John D.) brought it to the bank and left it there, with word that "McGrath would give instructions about it;" at all events, the First National Bank sent the note to St. Louis, to the Continental Bank, on the same day of the Bothwell indorsement, and this was done in pursuance of prior arrangements. The exact terms of the instructions to the bank do not appear. The note was not indorsed to the Sedalia bank for collection, or otherwise. The Sedalia bank placed no indorsement upon it. The banks were both a mere convenience to effect an exchange, the terms of which they were not interested in, and the Sedalia bank, as its way of getting at results, inclosed the note to the Continental Bank in "collection" letter. The Continental Bank informed O'Day in pursuance of instructions, and O'Day sent his clerk with the money to get the note as he agreed, and it was delivered to him. This was the twenty-eighth of June, 1888. Some-one, by whom it was done does not appear, put the Continental Bank stamp of "paid" on this note. Some one, by whom, and when, it was done does not appear, erased it. O'Day filled in the blank designedly left in the blank indorsement of Bothwell, with the name of "H. L. Morrill," and subsequently wrote an assignment from Morrill to Randolph on a piece of paper attached to the note, and sent it to Morrill to sign, which he did. On the question as to whether Russell knew the note was to be assigned, and consented to the arrangement, the evidence is somewhat obscure

and conflicting. It consists, *first*, of the acts of the parties as aforesaid, and, *secondly*, what was said during the negotiations. Russell claims he did not know it, but admits he was indifferent, and that what he wanted was to get the money. We have here borrowed largely, in the foregoing statement of the evidence, from that set out in defendant's brief, since we find it a fair relation of the testimony in his behalf, as appears from the record before us.

From this it is difficult to find any fault with the jury's finding. In the matter of the purchase and the transfer of this note and attendant mortgage, plaintiff's counsel contends rightly that, like other contracts, there must be a concensus of minds of indorser and indorsee. There could be no legal transfer of the note without the assent of the holder. *Wolff v. Walter*, 56 Mo. 292.' There appears here one "physical fact" at least, which argues very strongly in favor of this assent by the holder to O'Day's purchase of the note. I refer to the written indorsement of Bothwell transferring the note in express terms. Mrs. Schmidt, it is true, did not, in person, pen this transfer, yet Russell, her agent, did, and the same was by him sent to St. Louis preparatory to securing the money thereon. The note thus indorsed by the apparent holder and owner was notice of itself to O'Day that the holder had agreed to sell and transfer the same to whomsoever should pay the amount called for. It is said in *Neuhoff v. O'Reilly*, 93 Mo. 164, that "where the true owner of a negotiable note, overdue, clothes another with the usual evidence of ownership or with full power of disposition, and third persons are thereby led into dealing with such apparent owner and receive a transfer of the same, they will be protected."

As to O'Day's intention of becoming a purchaser of the note, the evidence is all one way. He never intended a payment of the note and mortgage, but simply to take up and carry the incumbrance for the

temporary relief of an embarrassed friend. This being his intention the duty of the court is to give effect to such intention. *Campbell v. Allen*, 38 Mo. App. 27.

At the trial plaintiff offered to read in evidence a chattel mortgage by the Sedalia *Democrat* Newspaper Company, executed by M. K. McGrath, president, dated some months after O'Day's purchase of the note, which on objection by defendant was excluded ; and of this ruling plaintiff makes now some complaint. In our opinion the trial court was correct in such ruling. There is no possible theory upon which this mortgage could be used to impair O'Day's title to the fifteen-hundred-dollar note. At most it could only be used to show that McGrath did not then consider the Schmidt mortgage a subsisting claim against the newspaper property. But McGrath cannot be permitted thus to admit away the rights of O'Day.

We discover no reversible error in the record, and the judgment, therefore, of the circuit court is affirmed. All concur.